# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH ZEISLOFT SHENK, | : | No. 1:11-CV-1238 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### May 13, 2013

This employment discrimination action comes before the Court on the

Report and Recommendation ("R&R") (doc. 46) of Magistrate Judge Mildred E.

Methvin, filed March 12, 2013. Said R&R recommends that we grant in part and

deny in part the pending motion for summary judgment (doc. 31). The Defendants

filed objections (doc. 52) and a supporting brief (doc. 51) and the Plaintiff filed a

brief opposing the Defendants' objections (doc. 53). For the reasons that follow,

we shall adopt in part and reject in part Judge Methvin's recommended disposition

as more fully outlined herein.

## I.    STANDARDS OF REVIEW

### A.    Review of Magistrate Judge's Report and Recommendation

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.    Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background[1]

Plaintiff Elizabeth Zeisloft Shenk ("Plaintiff"or "Shenk") was a senior management level employee with the Defendant Pennsylvania Board of Probation and Parole ("Board"). Shenk began her employment with the Board in June of 2007 when she was hired as the Director of the Office of Administrative Services ("OAS"). Defendant Catherine McVey ("McVey"), as Chairman of the Board, was the agency's chief executive and was responsible for the overall administration of Board activities and services. Shenk reported directly to McVey throughout her tenure with the Board, and the parties do not dispute that McVey was Shenk's

---

[1] Magistrate Judge Methvin undertook an excellent review of the undisputed facts within her R&R at pages 2 through 12. For the sake of judicial economy, we shall summarize only the most pertinent facts herein, but direct the reader to the R&R for a full factual exposition.

supervisor. Defendant John Tuttle, the Director of the Office of Probation and Parole Services, oversaw the operations side of the agency. McVey appointed Tuttle as deputy executive director, and when McVey was unavailable, which Shenk contends was often, Shenk was to report to Tuttle.

In early 2007, when Shenk's predecessor retired following an investigation into sexual harassment allegations, the Board began interviewing candidates for the OAS Director position. Shenk interviewed with McVey and Tuttle, at which point McVey stressed that the selected candidate would assume responsibility for developing the budget. Shenk had previous budgeting experience with both the Department of Public Works and the Governor's Budget Office, and following her interview, she was offered the OAS Director job and assumed the position in June of 2007. Shenk's responsibilities included overseeing the agency's administrative and management services and assisting McVey with staff development, training, equal employment opportunity services, organizational analysis, and budget analysis, among other administrative functions.

Throughout her short-lived tenure with the Board, Shenk contends that she opposed unlawful discrimination, retaliation, and sexual harassment, including discrimination against veterans. For example, when Shenk learned that several employees felt that they were being retaliated against for their involvement in the

investigation of Shenk's predecessor, she reported the perceived retaliation to McVey. When she learned of a report that showed that the Board had been hiring too few females and non-white males, the Plaintiff met with Defendant Tuttle to voice her concerns with those hiring practices. The Plaintiff was also involved in a sexual harassment investigation involving two supervisors, Craig Williams and James Commins, and as part of that investigation, recommended that Williams and Commins be instructed regarding retaliation. However, that recommendation was rejected and the Plaintiff was directed to shred her report.

According to McVey, the Williams/Commins incident was the "breaking point" for her with regard to the Plaintiff, and on April 1, 2008, McVey met with Shenk and advised her that she had thirty (30) days to seek other employment. At that time, McVey mentioned the Williams/Commins investigation and showed Shenk a negative performance evaluation. McVey stated that she had prepared the evaluation but did not sign it, mail it, or place it in the her file because she did not want to damage Shenk's reputation. Shenk testified that she received a copy of the review in the mail in the summer of 2008.

On April 16, 2008, Shenk applied for and was granted FMLA leave from May 1, 2008 to July 31, 2008 in order to care for her mother. On June 12, 2008, Shenk sent an email to McVey, informing McVey of her mother's health and her

job search. McVey sent a letter to Shenk on July 2, 2008, reminding Shenk of the April 1, 2008 directive that she seek new employment and informing Shenk that she was expected to comply with that directive upon return from FMLA leave. McVey concluded the letter by stating: "Please be advised that your failure to comply with my directive by [your return from leave] will result in appropriate administrative action being taken." (Doc. 32-13, p. 1). McVey did not have to take further "administrative action" because Shenk found another position. Shenk's position with the Board was ultimately filled by a male coworker.

## B.    Procedural History

On August 25, 2008, Shenk cross filed a complaint with both the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, alleging gender discrimination, association discrimination, and retaliation. Thereafter, Shenk initiated this action by filing a Complaint (doc. 1) on June 30, 2011, which asserted seven causes of action as follows: retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. (Count I) and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 951, *et seq*. (Count II); gender-based discrimination in violation of Title VII (Count III) and the PHRA (Count IV); retaliation in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et*

*seq.* (Count V); retaliation in violation of the Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, *et seq.* (Count VI); and associational discrimination

on the basis of relation to an individual with disabilities (Count VII).

The Defendants filed a motion to dismiss on September 12, 2011. On

February 2, 2012, we entered an order which granted in part and denied in part

said motion, holding that the Plaintiff's PHRA and USERRA claims against the

Board and the Commonwealth were barred by sovereign immunity but otherwise

allowing the Plaintiff's discrimination and retaliation claims to proceed. Following

a period of discovery, the Defendants filed a motion for summary judgment (doc.

31) on July 31, 2012, and we referred the motion to Magistrate Judge Methvin for

a report and recommendation.

### C.     Report and Recommendation

On March 12, 2013, Magistrate Judge Methvin issued a report and

recommendation ("R&R") which recommends that we grant the Defendants'

motion for summary judgment to the extent it seeks dismissal of the Plaintiff's

USERRA and associational discrimination claims, finding that the record contains

insufficient evidence to support either. Specifically, Judge Methvin concludes that

the Plaintiff had not presented any evidence from which a reasonable jury could

find that she was terminated either for her advocacy of veterans or as a result of

her mother's disability. Judge Methvin recommends that summary judgment be denied with regard to the Plaintiff's Title VII, PHRA, and FMLA claims, opining that the Plaintiff has presented sufficient evidence in support thereof to create genuine issues of material fact for trial.

### D. Objections

On April 15, 2013, the Defendants filed specific objections (doc. 52) to the R&R contending as follows: (1) the R&R erred by finding an issue of fact as to whether Defendant Tuttle was the Plaintiff's supervisor for the purpose of finding individual liability; (2) the R&R erred by finding that the Plaintiff had sufficiently established pretext in her gender discrimination claim; (3) the R&R erred by determining that the Plaintiff had established the requisite elements of her Title VII and PHRA retaliation claims; and (4) the R&R erred by finding that the Plaintiff had established the requisite elements of her FMLA retaliation claim. The Defendants filed a supporting brief (doc. 51) on April 15, 2013, and on April 29, 2013, the Plaintiff filed opposition papers (doc. 53) responding to each of the Defendants' specific objections. This matter is thus ripe for our review.

## IV. DISCUSSION

As we have noted, the Defendants object to four specific findings in the R&R. We will address each of these objections *seriatim*.

**A.    Does the R&R err by concluding that genuine issues of material fact remain with regard to whether Defendant Tuttle was the Plaintiff's supervisor?**

The Defendants first contend that the R&R erred by concluding that genuine issues of material fact remain with regard to whether Defendant Tuttle was the Plaintiff's supervisor and is thus subject to individual liability under the PHRA.[2] The PHRA provides that "an individual supervisory employee can be held liable under an aiding and abetting/ accomplice theory pursuant to Section 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." *Davis v. Levy, Angstreich, Finney, Baldante, Rubinstein & Coren*, 20 F. Supp. 2d 885, 887 (E.D. Pa. Oct. 14, 1998). In their motion, the Defendants contend that Defendant Tuttle was not the Plaintiff's supervisor and is thus not subject to individual liability.

In the R&R, Judge Methvin compares Plaintiff's testimony to the evidence presented by the Defendants and concludes that there exists a genuine issue of material fact as to whether Defendant Tuttle was in fact the Plaintiff's supervisor. Specifically, Judge Methvin notes that the Plaintiff testified that she was to report to Tuttle in McVey's absence, which was apparently often, and that McVey

---

[2] While similar in many respects, Title VII and the PHRA are distinct in that only the latter provides for any form of individual supervisory liability.

testified that she likely discussed the Plaintiff's dismissal with Tuttle. On this basis, Judge Methvin concludes that sufficient record evidence existed to support a jury finding that Tuttle was the Plaintiff's supervisor, precluding summary judgment in his favor on the PHRA claim.

In their objections, the Defendants contend that the Magistrate Judge erred in giving weight to the Plaintiff's affidavit over the evidence presented by the Defendants, to wit, an organizational chart corroborating McVey's and Tuttle's testimony as to the organizational hierarchy. It is true that reliance solely on an unsupported affidavit has generally been discouraged. *See, e.g.*, *Evans v. PP&L Co.*, 98 F. App'x 151 (3d Cir. 2004). However, this argument ignores the plain fact that the record contains other documentary evidence and testimony to support the affidavit. Specifically, record evidence tends to establish that Tuttle, along with McVey, interviewed Plaintiff for her position; that Tuttle, according to McVey's testimony, may have been consulted regarding McVey's decision to dismiss the Plaintiff; and that the Plaintiff reported to Tuttle in McVey's absence and considered him to be her supervisor. This evidence, when viewed in the light most favorable to the Plaintiff, creates a genuine issue of fact on the issue of whether Tuttle served as a supervisor to the Plaintiff, precluding summary judgment in his favor. We will thus adopt the R&R as it relates to this issue.

**B.      Does the R&R err by finding pretext on the Plaintiff's Title VII and PHRA gender discrimination claims?**[3]

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case and held that a three-step burden-shifting paradigm governs these claims. The plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that those proffered reasons were not the employer's true reasons but were instead pretext for discrimination. *Id.* at 802-04.

For purposes of their motion and objections, the Defendants concede that the Plaintiff has established a *prima facie* case of gender-based discrimination pursuant to Title VII and the PHRA. Further, the R&R acknowledges, and we must agree, that the Board has offered legitimate non-discriminatory reasons for

---

[3] With the exception of the individual liability issue addressed *supra*, the Third Circuit has long recognized that "Pennsylvania courts assess PHRA claims in accord with their federal counterparts" and thus applied federal standards of review in addressing PHRA claims. *See Burgess-Walls v. Brown*, 2011 U.S. Dist. LEXIS 94087, *7 (E.D. Pa. Aug. 22, 2011) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000)). Accordingly, because the standards governing both of these claims are identical, we address them together.

its employment decision, to include violation of civil service rules, poor work performance with regard to the budget process and pay differential proposals, and improper handling of the investigation of Commins and Williams. Thus, the only issue before the Court with respect to the Plaintiff's gender discrimination claims is the Defendants' argument that the Plaintiff has failed to satisfy the third prong of the *McDonnell Douglas*[4] analysis by failing to submit sufficient evidence from which a trier of fact could conclude that the Defendants' offered reasons are pretextual or untruthful.

The Plaintiff's burden at this point was articulated by the Third Circuit in *Fuentes v. Peskie*, 32 F.3d 759 (3d Cir. 1994):

> A plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Id.* at 764. This burden requires the Plaintiff to produce sufficient evidence from which a reasonable juror might conclude that "the employer's proffered reasons were not its true reasons for the challenged employment action." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996). The Plaintiff

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

argues, and the Magistrate Judge agreed, that there is sufficient record evidence to call into question the credibility of each of the Defendants proffered reasons. After our own review of the record, we agree with the Plaintiff and the Magistrate Judge that genuine issues of fact preclude summary judgment as to this claim.

As Magistrate Judge Methvin notes, the Plaintiff has pointed to ample evidence which counters, contradicts, or otherwise exposes inconsistencies in the Defendants' proffered nondiscriminatory reasons for their decision to terminate her. For example, with regard to the Defendants' contention that violation of civil service rules prompted the Plaintiff's termination, the Plaintiff has pointed out that McVey did not recall these purported rule violations, thus casting serious doubt on whether they formed the basis of her decision to terminate the Plaintiff, then an upper-level management employee. The Plaintiff has presented evidence which, if believed, tends to contradict or disprove each of the Defendants' proffered reasons for her termination. Because many of these determinations rest on the credibility of the witnesses, most of whom have some interest in this litigation, we cannot but conclude that genuine issues of material fact preclude summary judgment as to the third *McDonnell-Douglas* prong. Further, we reject the Defendants' contention that the Plaintiff's efforts at discrediting their offered rationales are insufficient to carry her burden at this stage and that she must prove discriminatory animus. The

14

Third Circuit has rejected this argument, holding that "if the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case." *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). Thus, we are in agreement with Magistrate Judge Methvin's analysis on this issue and will adopt the R&R in full as it pertains to the Plaintiff's gender-based discrimination claims.

### C. Does the R&R err by finding that the Plaintiff had established the requisite elements of her Title VII and PHRA retaliation claims?

The Defendants next object to the Magistrate Judge's recommendation that summary judgment be denied as to the Plaintiff's Title VII retaliation claims. As Magistrate Judge Methvin correctly notes, in order to prove a Title VII retaliation claim, a plaintiff must establish: (1) that she engaged in activity protected by or opposed activity made unlawful by Title VII; (2) that the defendant took adverse employment against her; and (3) that there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). The Plaintiff here brings an opposition claim, asserting that she opposed unlawfully discriminatory activities and was retaliated against as a result. For purposes of their motion and these objections, the

Defendants concede that the second element has been satisfied, however, they object to Magistrate Judge Methvin's finding that the Plaintiff has established the first and third elements. We review each of these contentions in turn.

In her R&R, Judge Methvin found that the Plaintiff had engaged in three distinct opposition activities: first, she reported unlawful retaliation to McVey when coworkers who were involved in the sexual harassment investigation of Gary Schiccitano, the Plaintiff's predecessor, indicated that they were being retaliated against in the wake of that scandal; second, that she met with Defendant Tuttle to voice her concerns about a report which indicated that too few women and minority males were receiving job offers; and third, that she recommended that Commins and Williams receive instruction about retaliation following her finding that they had engaged in sexual harassment.

The Defendants object to the R&R's characterization of each of these instances as protected opposition activity, contending that the Plaintiff was merely reporting up the chain of command information that she was required to report as part of her job description and relaying the complaints of subordinates rather than actually opposing any activity made unlawful by Title VII. The Third Circuit has explained that "'[o]pposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to

management.'" *Moore*, 461 F.3d at 343. "To determine if retaliation plaintiffs sufficiently 'opposed' discrimination, 'we look to the message being conveyed rather than the means of conveyance.'" *Id.* A plaintiff engaged in opposition activity need not demonstrate that the opposed conduct was actually a violation of the law; instead, she must show that she possessed an objectively reasonable, good faith belief that she was opposing unlawful conduct. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

A reasonable reading of the record supports the Plaintiff's assertion that she was opposing retaliatory conduct against her subordinates when she reported the same to the Defendants; it also supports a finding that the Plaintiff was protesting the underutilization of female and minority male employees in the workplace when she spoke to Defendant Tuttle about that issue. Further, given her testimony and other supporting evidence, we cannot find, as the Defendants would have us, that Plaintiff's belief that she was opposing illegal activities was objectively unreasonable. We thus cannot agree with the Defendants that summary judgment is appropriate for failure of this first element.

The analysis does not end there, however, because the Plaintiff also must establish that her termination was causally connected to her protected activities. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third

Circuit has recognized two primary methods for an employee to substantiate a causal connection: (1) showing that the temporal proximity between the two is "unusually suggestive," or (2) demonstrating an "ongoing antagonism" between the plaintiff and her employer. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). While the passage of mere hours or days has been deemed unusually suggestive, courts have held that the passage of weeks, months, and years removes any suggestion of retaliatory motive. *Compare Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two month gap insufficient); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three week gap insufficient) *with Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two day gap unusually suggestive); *Reinhart v. Mineral Techs., Inc.*, 2006 U.S. Dist. LEXIS 89279, *35 (E.D. Pa. Nov. 27, 2006) (twenty-four hour turnaround unusually suggestive). In the absence of suggestive timing, the courts look for other evidence of retaliatory animus. *See Farrell*, 206 F.3d at 281 (court should review record for "an evidentiary basis from which an inference can be drawn" that adverse action was retaliatory).

Magistrate Judge Methvin concluded that both of the aforestated factors support a denial of summary judgment at this stage. First, with regard to the temporal proximity inquiry, Judge Methvin noted that while the first two protected

acts were too remote to be considered suggestively proximal, the Plaintiff's recommendation with regard to the Commins and Williams investigation, while made in January 28, 2008, was not resolved until March, approximately one month prior to McVey's April 1 directive that the Plaintiff seek a new job. Judge Methvin concluded that this temporal proximity satisfied the first prong. The Magistrate Judge went on to further conclude that this proximity coupled with evidence of ongoing antagonism sufficiently supported the Plaintiff's claim, precluding summary judgment. In their objections, the Defendants assert that Judge Methvin erred in determining the date of the Plaintiff's protected activity for purposes of calculating temporal proximity and further erred by finding that the Plaintiff had proven ongoing antagonism. We disagree with the Defendants on both of these points and ultimately will adopt the Magistrate Judge's findings on this claim.

First, with regard to temporal proximity, the record reflects that in January of 2008, the Plaintiff made a recommendation to McVey which apparently insisted that Commins and Williams, both perpetrators of sexual harassment, be warned regarding retaliation. The Defendants are correct that the nearly four-month period between that January recommendation and the April directive that the Plaintiff find new employment would likely be too remote to be considered unusually suggestive. *See Williams*, 380 F.3d at 760; *Thomas*, 351 F.3d at 114; *Jalil*, 873

F.2d at 708; *Reinhart*, 2006 U.S. Dist. LEXIS 89279 at *35. However, the record also reflects that the investigation into that matter did not conclude until March of 2008, approximately one month before McVey informed the Plaintiff that she was to find new employment. Thus, like Judge Methvin, we find that the timing of this threat could certainly be considered suggestive by reasonably-minded jurors.

Further, we must also review the record to determine whether there exists "an evidentiary basis from which an inference can be drawn" that adverse action was retaliatory. *See Farrell*, 206 F.3d at 281. The Plaintiff points to several pieces of evidence in support of this factor, including that the Defendants referred to the Plaintiff as a "getcha" person and directed her to shred her recommendation in the Commins/Williams matter. At this juncture, viewing the record in the light most favorable to the Plaintiff, we conclude that this evidence is sufficiently indicative of retaliatory animus such that a reasonable juror could conclude that the adverse employment decision was causally connected to the Plaintiff's protected activities. For these reasons, we agree with Magistrate Judge Methvin and adopt her analysis, concluding that the record precludes judgment in the Defendants' favor.[5]

---

[5] The Defendants spill much ink arguing that the employment decision was the result of the Plaintiff's misunderstanding of her responsibilities in the Williams/Commins investigation and not as a result of the specific relief for which she advocated. These points, however, are largely based on credibility determinations and inferences drawn in the Defendants' favor. We decline the Defendants' invitation to construe the record against the Plaintiff, which would be to contravene the well-established standard of review for summary judgment motions. Applying the

**D.      Does the R&R err by finding that the Plaintiff had established the requisite elements of her FMLA retaliation claim?**

As with the Plaintiff's Title VII retaliation claims, her FMLA retaliation claim also requires her to establish that she invoked a protected right, that she suffered an adverse employment action, and that the adverse action was causally linked to her exercise of the protected FMLA right. *See Sarnowski v. Air Brooke Limousine*, 510 F.3d 398, 401 (3d Cir. 2007). In determining whether a causal connection exists, we again are tasked with considering two factors: timing and evidence of ongoing antagonism. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). In the R&R, Judge Methvin concluded that the negative performance evaluation allegedly mailed to the Plaintiff on June 12, 2008 constituted an adverse employment action and that its temporal proximity to Plaintiff commencing FMLA leave on May 1, 2008 is suggestive of retaliation. (Doc. 46, pp. 48-50). On the record before us, we must disagree.

Adverse employment action in the context of the FMLA means a change in employment that is "significant, . . . such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Weston v.*

_____

appropriate summary judgment standard, which tasks us to construe the evidence and all reasonable inferences in the Plaintiff's favor, we cannot conclude that a reasonable juror could not find for the Plaintiff.

*Pennsylvania*, 251 F.3d 420 (3d Cir. 2001). Although negative performance evaluations in and of themselves are generally not considered to be adverse employment actions, they can constitute an adverse employment action when accompanied by threatening statements or other tangible job consequences. *See Boandle v. Geithner*, 752 F. Supp. 2d 540, 565 (E.D. Pa. Nov. 2, 2010). Logically, where the adverse employment action occurs prior to the plaintiff's protected activity, there exists "no evidence whatsoever of causality," and the retaliation claim must be dismissed. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of retaliatory causality.").

The record unequivocally establishes that Defendant McVey informed Plaintiff that she was to find a new job and showed her the negative performance evaluation on April 1, 2008, several weeks before the Plaintiff applied for and was granted FMLA leave. As in *Breeden*, the record demonstrates that Defendant McVey, in her subsequent communication to the Plaintiff, was simply proceeding with the course that she had outlined weeks earlier. Thus, there being "no evidence whatever of retaliatory causality," we will reject the Magistrate Judge's R&R to the extent that it recommends denial of the Defendants' summary judgment motion as to this claim.

### E. Remainder of the R&R

As we have noted, neither party filed objections to the remainder of the R&R, wherein Magistrate Judge Methvin recommends that the Defendants' motion be granted to the extent it seeks dismissal of the Plaintiff's USERRA claim and her associational discrimination claims, finding that the record contains insufficient evidence to support either. Upon review of the submissions and the record, we agree with the sound reasoning that led Judge Methvin to the conclusions reached with regard to each of these claims. With a mind toward conserving judicial resources, we will not rehash the reasoning of the Magistrate Judge; rather, we will attach a copy of the R&R to this memorandum, as it accurately reflects our consideration of the case *sub judice*.

## V. CONCLUSION

For all of the reasons stated herein, we will adopt in part and reject in part the Magistrate Judge's Report and Recommendation (doc. 46) and grant in part and deny in part the Defendants' motion for summary judgment (doc. 31).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Report and Recommendation (doc. 46) of Magistrate Judge Methvin is **ADOPTED** in part and **REJECTED** in part to the following extent:

23

a.  The Report and Recommendation is **REJECTED** to the extent that it recommends that summary judgment be denied as to Plaintiff's FMLA claim.

b.  The Report and Recommendation is **ADOPTED** in all other respects.

2.  The Defendants' Motion for Summary Judgment (doc. 31) is **GRANTED** in part and **DENIED** in part to the following extent:

a.  The Motion is **GRANTED** to the extent it relates to the Plaintiff's USERRA, FMLA, and associational discrimination claims. Judgment is **ENTERED** in favor of the Defendants on Count V (USERRA), Count VI (FMLA) and Count VII (ADA associational discrimination).

b.  The Motion is **DENIED** in all other respects.

3.  Within fourteen (14) days of the date of this Order, the parties shall file a joint stipulation on the docket placing this matter on a trial term consistent with the Court's calendar, as attached hereto.

s/ John E. Jones III
John E. Jones III
United States District Judge

**Judge Jones**
**2013 Court Calendar**

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | 7/30/12 | 9/3/12 | 12/3/12 | 1/3/13 |
| February | 8/31/12 | 10/1/12 | 1/2/13 | 2/4/13 |
| March | 9/28/12 | 11/1/12 | 2/1/13 | 3/4/13 |
| April | 10/31/12 | 12/3/12 | 3/1/13 | 4/2/13 |
| May | 11/30/12 | 1/1/13 | 4/1/13 | 5/2/13 |
| June | 12/31/12 | 2/1/13 | 5/1/13 | 6/4/13 |
| July | 1/31/13 | 3/1/13 | 6/3/13 | 7/2/13 |
| August | 2/28/13 | 4/1/13 | 7/1/13 | 8/2/13 |
| September | 3/29/13 | 5/1/13 | 8/1/13 | 9/4/13 |
| October | 4/30/13 | 6/3/13 | 9/3/13 | 10/2/13 |
| November | 5/31/13 | 7/1/13 | 10/1/13 | 11/4/13 |
| December | 6/28/13 | 8/1/13 | 11/1/13 | 12/3/13 |

**Judge Jones**
**2014 Court Calendar**

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | 7/30/13 | 9/2/13 | 12/2/13 | 1/3/14 |
| February | 8/30/13 | 10/1/13 | 1/2/14 | 2/4/14 |
| March | 9/27/13 | 11/1/13 | 2/3/14 | 3/4/14 |
| April | 10/31/13 | 12/2/13 | 3/3/14 | 4/2/14 |
| May | 11/29/13 | 1/1/14 | 4/1/14 | 5/2/14 |
| June | 12/31/13 | 2/3/14 | 5/1/14 | 6/3/14 |
| July | 1/31/14 | 3/3/14 | 6/2/14 | 7/2/14 |
| August | 2/28/14 | 4/1/14 | 7/1/14 | 8/4/14 |
| September | 3/31/14 | 5/1/14 | 8/1/14 | 9/3/14 |
| October | 4/30/14 | 6/2/14 | 9/2/14 | 10/2/14 |
| November | 5/30/14 | 7/1/14 | 10/1/14 | 11/4/14 |
| December | 6/30/14 | 8/1/14 | 11/3/14 | 12/2/14 |